UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-80942-CIV-DAMIAN

**LDL CAPITAL, LLC**, *et al.*,

    Plaintiffs,

v.

**CORBIN BLUME,**

    Defendant.

_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT FINAL JUDGMENT [ECF NO. 25]

**THIS CAUSE** is before the Court on Plaintiffs LDL Capital, LLC, White Leopard Investments Ltd., David Burck, Robert Thomas Burns IV, Michael Costello, Chris W. Deitz, Sean Burnham Tabor, George Joseph Tabor, and Pamela Ann Tabor's (collectively, "Plaintiffs"), Motion for Default Final Judgment against Defendant, Corbin Blume ("Blume" or "Defendant"), filed February 14, 2024. [ECF No. 25 ("Motion")].

THE COURT has reviewed the Motion, the record in this case, and the applicable law, and is otherwise fully advised. Defendant has failed to respond to the Motion or otherwise appear in this case. For the reasons discussed below, the Court grants the Motion.

### I. BACKGROUND

   *A. The Allegations*

On June 20, 2023, Plaintiffs filed a Complaint against Defendant for breach of contract. [ECF No. 1]. On October 25, 2023, Plaintiffs filed an Amended Complaint, which also asserts one Count for breach of contract and also states the necessary requirements for

substitute service pursuant to Florida law. [ECF No. 18]. The Amended Complaint is the operative pleading in this action.

As alleged in the Amended Complaint, Blume is the Chairman and Manager of Jaguar Cryptocurrency, LLC ("Jaguar"), a company engaged in Bitcoin mining and headquartered in West Palm Beach, Florida. Am. Compl. ¶¶ 10, 15–17. Blume solicited Plaintiffs to acquire membership interests in Jaguar. *Id.* ¶ 17. Each of the Plaintiffs purchased membership interests in Jaguar and are members of the company. *Id.* ¶ 18. After Plaintiffs' acquisition of their respective membership interests in Jaguar, Blume offered in writing to purchase each of the Plaintiffs' membership interests. *Id.* ¶¶ 17–20.

To this end, on January 10, 2023, Blume sent a letter to Plaintiffs offering to purchase each of their membership interests "at a 1.40 multiple on [their] capital invested" (the "Offer Letter"). *See id.* ¶¶ 21–22; Ex. A to Am. Compl. [ECF No. 18-1]. The Offer Letter instructed that if any Plaintiff "want[ed] to take [Blume] up on" his offer to purchase their membership interests, to "please sign the attached [Settlement] Agreement memorializing the purchase terms." Am. Compl. ¶ 23. Each of the Plaintiffs accepted the offer by completing, signing, and returning to Blume the Settlement Agreement and Release (the "Settlement Agreement") attached to the Offer Letter as instructed in the Offer Letter. *Id.* ¶¶ 24, 25; *see also* Settlement Agreements Executed by Plaintiffs [ECF Nos. 18-2 through 18-9].

Plaintiffs allege that Blume reaffirmed several times in writing his intention and obligations under the Offer Letter and Settlement Agreements to purchase each of the Plaintiffs' membership interests in Jaguar. *Id.* ¶¶ 27–30. Notwithstanding Blume's various reaffirmations to purchase Plaintiffs' membership interests in Jaguar as set forth in the Offer

Letter and Settlement Agreements, Plaintiffs allege Blume failed to perform and has therefore breached the Agreements.[1] *Id.* ¶ 31.

In Count I of the Amended Complaint, Plaintiffs allege the Offer Letter constitutes a unilateral contract by which Plaintiffs could accept Blume's offer by completing, executing, and returning the form Settlement Agreement prepared by Blume and attached to the Offer Letter. *Id.* ¶ 38. Plaintiffs allege they each accepted Blume's offer in January 2023 by completing, executing, and returning the Settlement Agreements, but Blume breached the Agreements with each of them by not paying the sums due to each Plaintiff as provided in the Offer Letter and Settlement Agreement. *Id.* ¶ 39. Plaintiffs seek to recover the amounts due pursuant to agreements with Blume, set forth in the Settlement Agreements, plus pre-judgment and post-judgment interest and attorney's fees and costs. *Id.* at 16.

### B. *Substituted Service of Process*

In the Amended Complaint, Plaintiffs allege they attempted to serve Blume with the summons and Complaint at Blume's place of residence in California on eighteen (18) different occasions over the course of three and a half months but that all attempts were unsuccessful.[2] Am. Compl. ¶ 13(a)–(i); *see also* Status Reports on Service of Process Attempts [ECF Nos. 9, 11, 14, 17].[3]

Based on these unsuccessful service attempts, including the engagement of a private investigation company to verify Blume's whereabouts, Plaintiffs allege Blume is intentionally

---

[1] The Agreement at issue in this case is comprised of both the Offer Letter and the Settlement Agreement attached to the Offer Letter, which provides the specific terms of the Agreement.

[2] Plaintiffs requested an extension of time to perfect service [ECF No. 15], which the Court granted on September 20, 2023. *See* ECF No. 16.

[3] A Status Report indicates that the process server was able to confirm with a security guard that Blume lives at the California address but that he appeared to be evading service. *Id.*

evading service of process, and, therefore, substitute service is proper pursuant to Sections 48.181(2) and (4), Florida Statutes. Am. Compl. ¶ 13(j)–(k).

On November 15, 2023, Plaintiffs' counsel, Michael J. Barrie, filed an Affidavit of Compliance indicating that on October 26, 2023, substitute service of the summons and initial pleadings was accepted by the Florida Secretary of State, pursuant to Section 48.161(7), Florida Statutes ("Acceptance Notice"). *See* Affidavit of Compliance of Michael J. Barrie ("Barrie Affidavit") [ECF No. 20 at ¶ 15]. Plaintiffs sent the Acceptance Notice, Amended Complaint, and the Alias Summons to Blume's California address via Federal Express and to Blume's last known email address. *Id.* ¶¶ 16–17.

### C. *Procedural Posture*

Plaintiffs requested entry of default against Blume, which the Clerk of Court entered on December 7, 2023, for failure to respond or otherwise appear. [ECF Nos. 21, 23]. On February 14, 2024, Plaintiffs filed the Motion now before the Court seeking entry of default judgment against Blume. [ECF No. 25].

As of the date of this Order, Blume still has not responded to the Amended Complaint, the Motion, nor any other filings in this case, and the time to do so has passed. Nor has an attorney made an appearance on his behalf.

In the Motion, like the allegations in the Amended Complaint, Plaintiffs allege Blume failed to purchase Plaintiffs' membership interests in Jaguar, and, therefore, Blume breached the agreements with Plaintiffs, set forth in the Settlement Agreements. Accordingly, Plaintiffs seek entry of a default final judgment against Blume for the following amounts due and owing under the respective Agreements: (a) as to Plaintiff LDL Capital, LLC, $210,000; (b) as to Plaintiff White Leopard Investments Ltd., $210,000; (c) as to Plaintiff David Burck, $70,000; (d) as to Plaintiff Robert Thomas Burns IV, $210,000; (e) as to Plaintiff Michael Costello,

4

$140,000; (f) as to Plaintiff Chris Deitz, $420,000; (g) as to Plaintiff Sean Tabor, $21,000; and (h) as to Plaintiffs George and Pamela Tabor, $21,000. Mot. at 4.

## II.   APPLICABLE LEGAL STANDARDS

Rule 55 of the Federal Rules of Civil Procedure governs default judgments. The entry of a default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002) (quoting Fed. R. Civ. P. 55(a)). "[E]ntry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered, with the standard for 'a sufficient basis' for the judgment being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Singleton v. Dean*, 611 F. App'x 671, 671 (11th Cir. 2015) (quoting *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015)). Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim. *Surtain*, 789 F.3d at 1245. Thus, before entering a default judgment, a court must ensure that the well-pleaded allegations in the complaint (which are taken as true due to the default) state a substantive cause of action and provide a sufficient basis for the particular relief sought. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007).

Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (citation omitted). Although an evidentiary hearing is generally required, the Court need not conduct such a hearing "when . . . additional evidence would be truly unnecessary to a fully informed determination of damages." *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 746 (11th Cir. 2017). Therefore, where the record adequately supports the award of damages, an evidentiary hearing is not required.

*See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *see also National Loan Acquisitions Co. v. Pet Friendly, Inc.*, 743 F. App'x 390, 393 (11th Cir. 2018) (holding an evidentiary hearing unnecessary in breach of contract action where there was evidence in the record as to lender's damages); *see also Vanderbilt v. Boat Bottom Express Ltd. Liab. Co.*, No. 4:18-CV-10261-JLK, 2019 WL 13255739, at *1 (S.D. Fla. June 18, 2019) ("[I]f the party requesting default judgment does not submit sufficient evidence to support its request for damages, the Court may conduct a hearing on damages." (citing Fed. R. Civ. P. 55(b))).

## III.   DISCUSSION

With the foregoing in mind, the Court turns to Plaintiffs' Motion and the allegations in the Amended Complaint.

In order to enter a valid default judgment, a court must have subject-matter jurisdiction over the claims and have personal jurisdiction over the defendant. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1215 & n.13 (11th Cir. 2009) (explaining that a default judgment is void if the court that granted the default judgment lacked jurisdiction over the subject matter or parties). Therefore, the Court first addresses whether Plaintiffs have established that this Court has subject-matter jurisdiction over this action and personal jurisdiction over Defendant.

### A.   *Subject-Matter Jurisdiction*

"[B]efore entering a default judgment, the Court must ensure that it has jurisdiction over the claims and there must be a sufficient basis in the pleadings for the judgment entered." *Tissone v. Osco Food Servs., LLC*, No. 19-CV-61358, 2021 WL 1529915, at *2 (S.D. Fla. Feb. 10, 2021) (Valle, J.), *report and recommendation adopted*, 2021 WL 870526 (S.D. Fla. Mar. 9,

2021) (Smith, J.) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[4]

Federal courts are courts of limited subject-matter jurisdiction and must be vigilant in ensuring that they have jurisdiction over a case. "[B]ecause a federal court is powerless to act beyond its statutory grant of subject[-]matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject[-]matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). "Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("Indeed, it is well settled that a federal court is obligated to inquire into subject[-]matter jurisdiction *sua sponte* whenever it may be lacking."). Moreover, the Court always has jurisdiction to determine whether it has jurisdiction over a matter. *United States v. Ruiz*, 536 U.S. 622, 628 (2002) ("[I]t is familiar law that a federal court always has jurisdiction to determine its own jurisdiction.").

In the instant case, the Amended Complaint alleges that this Court has subject-matter jurisdiction under 28 U.S.C. § 1332. Am. Compl. ¶ 11. Diversity jurisdiction is satisfied "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and the litigants are "citizens of different States." 28 U.S.C. § 1332(a)(1). In other words, there is complete diversity where "no plaintiff is a citizen of the same state as any defendant." *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1268 (11th Cir. 2013).

---

[4] Pursuant to *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206, 1209 (11th Cir. 1981), all Fifth Circuit cases decided prior to September 30, 1981, are binding precedent in this Circuit.

This Court is satisfied that Plaintiffs have adequately pled the bases for diversity jurisdiction. The jurisdictional amount is satisfied here because the Amended Complaint alleges that the amount at issue exceeds $75,000, which is supported by the allegations in the Amended Complaint regarding the sums due to Plaintiffs under the Agreements. *See* Am. Compl. at 5–16. In addition, the Amended Complaint adequately pleads the diverse citizenship of the parties.

The Amended Complaint alleges that Defendant, Corbin Blume, an individual, is a citizen of California. *Id.* at 2. Plaintiff LDL Capital, LLC, is a Delaware limited liability company with a principal place of business in Austin, Texas. *Id.* A limited liability company "is a citizen of every state that any member is a citizen of." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1220 (11th Cir. 2017). The Amended Complaint alleges that LDL Capital has four members, three of which are citizens of Texas and one of which is a citizen of Florida. Am. Compl. at 2. Therefore, for diversity purposes, Plaintiff LDL Capital is a citizen of Texas and Florida. Plaintiff White Leopard Investments Ltd. is a British Virgin Islands limited company with a principal place of business in the British Virgin Islands. *Id.* Plaintiffs David Burck, Michael Costello, Chris W. Deitz, Sean Burnham Tabor, George Joseph Tabor, and Pamela Ann Tabor are all citizens of Florida. *Id.* And Plaintiff Robert Thomas Burns IV is a citizen of Texas. *Id.*

This Court is satisfied that diversity jurisdiction exists, and, therefore, that it has subject-matter jurisdiction over Plaintiffs' claims.

### B. Personal Jurisdiction

A court must also have personal jurisdiction over a defendant. "A judgment rendered in the absence of personal jurisdiction is void and without legal effect." *Strange v. Nescio*, No. 20-80947-CV, 2021 WL 8945480, at *1 (S.D. Fla. Mar. 29, 2021) (Middlebrooks, J.) (citing

*Juris v. Inamed Corp.*, 685 F.3d 1294, 1335 (11th Cir. 2012)). Thus, "[a] defendant may defeat subsequent enforcement of a default judgment in another forum by demonstrating that the judgment issued from a court lacking personal jurisdiction even if the court entering the default determined that it had personal jurisdiction over the defendant." *Rash v. Rash*, 173 F.3d 1376, 1381 (11th Cir. 1999). For this reason, "when deciding a motion for default judgment, a court has an affirmative duty to evaluate whether it has personal jurisdiction over the defendant and may raise the issue *sua sponte*." *Strange*, 2021 WL 8945480, at *1.

In order to establish personal jurisdiction over a non-resident defendant, a plaintiff must satisfy two requirements: (1) the complaint must allege sufficient jurisdictional facts to bring the action within the state's long arm statute, Section 48.193, Florida Statutes; and (2) the plaintiff must demonstrate that sufficient minimum contacts exist between the non-resident defendant and the State so as to satisfy constitutional due process requirements. *Venetian Salami Co. v Parthenais*, 554 So. 2d 499, 502 (Fla. 1989); *see also Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010) ("The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted.") (citation omitted).

As explained below, Plaintiffs have demonstrated that both components are satisfied here.

### i. Substituted Service of Process

Service of process is a jurisdictional requirement. "[A] court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990). "Generally, where service of process is insufficient, the

court has no power to render judgment and the judgment is void." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003). "[W]ithout proper service of process, the district court ha[s] no power to enter a default judgment against the [defendant]." *Albert v. Discover Bank*, No. 21-12011, 2022 WL 1184405, at *1 (11th Cir. Apr. 21, 2022).

A default judgment against a defendant who is not properly served may be subject to vacatur. *See*, *e.g.*, *Morant v. Ritecare Med. Prods., LLC*, No. 13-61205-CIV, 2014 WL 12607016, at *1 (S.D. Fla. Oct. 29, 2014) (Scola, J.) (vacating default and default judgment against a defendant who was not properly served with service of process). Therefore, courts routinely deny entry of default judgment where the movant fails to show that service of process has been effectuated on the party against whom a default judgment is sought.

With regard to service on an individual, Federal Rule of Civil Procedure 4(e)(1) permits service on an individual to be completed in accordance with "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). As noted above, service of process on Blume was effectuated by substituted service pursuant to Sections 48.181(2) and (4), Florida Statutes. *See* Barrie Affidavit ¶ 10.

Section 48.181(1) provides for substituted service on nonresidents who conceal their whereabouts and engage in a business in Florida. The statute provides, in pertinent part, that persons who "operate, conduct, engage in, or carry on a business or business venture in [Florida]" and subsequently conceal their whereabouts may be served through substitute service on the Secretary of State for actions "arising out of any transaction or operation

connected with or incidental to the business or business venture." Fla. Stat. § 48.181(2) and (4).[5]

Florida courts strictly construe substitute service statutes because they provide an exception to the general rule that a defendant must be personally served. *Reef Clematis LLC v. Reef & Fum Bar Grp. LLC*, No. 09-81503-CIV, 2009 WL 5217077, at *2 (S.D. Fla. Dec. 30, 2009) (Marra, J.) (citing *Monaco v. Nealon*, 810 So. 2d 1084, 1085 (Fla. 4th DCA 2002)). The party seeking to effect substituted service of process has the burden of alleging the jurisdictional facts that bring the defendant within an applicable long-arm statute. *See Hernandez v. State Farm Mut. Auto. Ins. Co.*, 32 So. 3d 695, 697 (Fla. 4th DCA 2010); *Mecca Multimedia, Inc. v. Kurzbard*, 954 So. 2d 1179, 1182–83 (Fla. 3d DCA 2007). Long-arm jurisdiction exists for substituted service where the complaint pleads a basis for jurisdiction under Section 48.181, Florida Statutes, or it alleges sufficient jurisdictional facts to satisfy that statute. *Labbee v. Harrington*, 913 So. 2d 679, 682 (Fla. 3d DCA 2005) (citing *Venetian Salami*, 554 So. 2d at 502).

Here, the Amended Complaint specifically identifies Section 48.181, Florida Statutes, as the applicable long-arm statute. Am. Compl. ¶ 13. The Amended Complaint alleges that Blume is a citizen of the state of California and that he "engaged in business in the State of Florida through his business venture, Jaguar, and this case arises out of transactions or

---

[5] In order to support jurisdiction under Section 48.181, Florida Statutes, a plaintiff must allege in its complaint the basis for jurisdiction under the statute: "that the defendant is either a resident of a foreign state or country, a resident of Florida who subsequently becomes a nonresident, or a resident of Florida who conceals his whereabouts and that the course of action arises from business activities conducted in Florida." *CommerceBank, N.A. v. Taylor*, 639 So. 2d 1058, 1059 (Fla. 3d DCA 1994). A plaintiff need not plead facts to support substituted service but need only plead the basis for service in the language of the statute. Fla. R. Civ. P. 1.070(h). The statute requires the plaintiff to serve a copy of the summons and complaint on the Secretary of State and provide notice of that service to the defendant by mailing him a copy of the process via certified or registered mail. Fla. Stat. § 48.161(1).

operations connected with or incidental to his business." *Id.* ¶¶ 10, 12–13. Additionally, Plaintiffs aver that they were unable to serve Blume because he is intentionally concealing his whereabouts to evade service and that Plaintiffs "engaged in extensive efforts to personally serve Blume at his place of residence in California," including eighteen service attempts at Blume's residential address in California. *Id.* ¶ 13. These allegations are sufficient to meet the jurisdictional requirements of Section 48.181. *See Delancy v. Tobias*, 26 So. 3d 77, 79–80 (Fla. 3d DCA 2010) (holding the plaintiff properly resorted to substituted service after twenty-two service attempts over a three-month period at the defendant's address) (quoting *Grammer v. Grammer*, 80 So. 2d 457, 460–61 (Fla. 1955)).

Based on a review of the Amended Complaint and the supporting documents, including the Barrie Affidavit, this Court finds that Plaintiffs have demonstrated they properly effectuated substituted service of process on Defendant.

### ii. Amenability to Personal Jurisdiction

"The plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction over a nonresident defendant." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (emphasis added); *see also Warner Bros. Ent. Inc. v. Phillips*, No. 6:14-CV-1294-ORL-37, 2015 WL 4590519, at *3 (M.D. Fla. July 28, 2015) ("Even in the default judgment context, as a threshold matter, the plaintiff bears the burden of pleading sufficient facts to make out a *prima facie* case of personal jurisdiction over non-resident defendants." (emphasis added)).

> With regard to personal jurisdiction, the Amended Complaint states:
>
> The Court has personal jurisdiction over Blume because, among other reasons, (1) he operated, conducted, engaged in, and carried on his business venture—Jaguar—in the state of Florida, (2) he caused injury to Plaintiffs, many of whom are Florida citizens, arising out of an act or omission outside of this state, and (3) he engaged in solicitation activities in Florida giving rise to Plaintiffs' injuries.

Am. Compl. ¶ 12. Therefore, Plaintiffs assert Defendant is subject to personal jurisdiction in Florida based on Section 48.193(1)(a)1–2 and 6a, Florida Statutes.[6]

The determination of whether Defendant is subject to personal jurisdiction involves a two-part inquiry:

> First, the court must determine whether the applicable state statute governing personal jurisdiction is satisfied. [*Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)]. If the requirements of the long-arm statute are satisfied, then the court must inquire as to, (1) whether defendant has established sufficient "minimum contacts" with the state of Florida; and (2) whether the exercise of this jurisdiction over defendant would offend "traditional notions of fair play and substantial justice." *Id.* at 630–31 (quoting *International Shoe v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

*Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). As discussed below, the pleadings and other evidence submitted in support of the Motion are sufficient to show the Court has personal jurisdiction over Blume.

---

[6] Section 48.193, entitled "Acts subjecting person to jurisdiction of courts of state" provides, in relevant part:
> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
> 2. Committing a tortious act within this state.
> . . .
> 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>   a. The defendant was engaged in solicitation or service activities within this state[.]

13

<u>Florida's Long-Arm Statute</u>

Florida's long-arm statute, found in Section 48.193, Florida Statutes, governs both specific and general jurisdiction. Section 48.193(1) addresses specific jurisdiction resulting from a defendant's acts arising from or relating to that defendant's contacts with Florida. Section 48.193(2) addresses general jurisdiction based on the defendant's contacts with Florida, regardless of whether or not the contacts are related to the lawsuit. Florida's long-arm statute is strictly construed and "[the] Court is required to apply the statute 'as would the Florida Supreme Court.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (quoting *United Techs. Corp.*, 556 F.3d at 1274).

Plaintiffs do not allege general jurisdiction but rely on specific jurisdiction. Specifically, Plaintiffs contend that Florida's long-arm statute confers jurisdiction over Blume because he (1) "engaged in business in the State of Florida through his business venture, Jaguar, and this case arises out of transactions or operations connected with or incidental to his business; (2) "caused injury to Plaintiffs, many of whom are Florida citizens, arising out of an act or omission outside this state," and (3) "engaged in solicitation activities in Florida giving rise to Plaintiffs' injuries." Am. Compl. ¶¶ 13, 17, 20–21, 24, 27–30. These allegations are sufficient to establish specific personal jurisdiction over Blume under Florida's long-arm statute, and these allegations are supported by the facts set forth in the Amended Complaint.

"In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine 'whether the allegations of the complaint state a cause of action.'" *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010) (quoting *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) (footnote omitted)). As discussed below, Plaintiffs have stated a claim for breach of a unilateral contract

14

under Florida law. Therefore, the Court addresses the requirement that the exercise of personal jurisdiction over Defendant satisfy due process.

### Due Process

To satisfy the due process requirement, a plaintiff must demonstrate that sufficient minimum contacts exist between the non-resident defendant and the State so as to satisfy constitutional due process requirements. *See Venetian Salami*, 554 So. 2d at 502. The Eleventh Circuit has established a three part test to test whether the constitutional "minimum contacts" requirement is met: (1) the contacts must be related to the plaintiff's cause of action; (2) the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and (3) the defendant's contact with the forum must be such that the defendant should reasonably anticipate being haled into court in that state. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1220 (11th Cir. 1999); *see also Future Tech.*, 218 F.3d at 1250–51 (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Here, the Amended Complaint alleges Blume solicited Plaintiffs, through "physical in person meetings, including in the state of Florida" and "documents and communications sent to Plaintiffs," to acquire membership interests in Jaguar. Am. Compl. ¶¶ 12, 17. These persistent offers constituted a business venture in the State of Florida that gave rise to Plaintiffs' claim for breach of contract. The Amended Complaint further alleges Blume operated Jaguar in the State of Florida and caused injury to Plaintiffs, many of whom are Florida citizens. *Id.* ¶ 12. This is sufficient minimum contacts with the forum state to subject Blume to jurisdiction under the Florida long-arm statute. *See* Fla. Stat. § 48.193(1)(a)(1). As such, Blume should have anticipated that a dispute arising from those contacts could expose him to personal jurisdiction here.

Therefore, this Court concludes that the exercise of personal jurisdiction does not violate Due Process or contradict traditional notions of fair play and substantial justice. As such, Plaintiffs have sufficiently pled that the exercise of personal jurisdiction over Defendant is proper.

### C. Liability

Next, the Court considers whether Plaintiffs have stated a claim in the Amended Complaint against Defendant sufficient to withstand a motion to dismiss.

#### 1. Applicable Law.

As noted above, Plaintiffs have alleged one count for breach of contract. To determine whether Plaintiffs have stated a breach of contract claim, the Court must first identify and apply the substantive law governing Plaintiffs' claims. In the Amended Complaint, Plaintiffs allege Defendant breached a unilateral contract, that is, the Offer Letter and Settlement Agreements, and that the Settlement Agreements expressly provide that they are governed by the laws of the State of Florida. Am. Compl. ¶ 26; *see also* ECF No. 18-2 at 4 ("This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without reference to its choice of law provisions.").

#### 2. Elements Of A Breach Of Contract Claim.

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega*, 564 F.3d at 1272 (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008)).

#### 3. Existence Of A Contract.

Plaintiffs allege that the contracts at issue here are unilateral contracts. Under Florida law, "a unilateral contract is, as the name implies, one-sided—one party promises to do

16

something (for example, pay money) in exchange for performance (an act, forbearance, or conduct producing a certain result)." *Kolodziej v. Mason*, 774 F.3d 736, 740 n.3 (11th Cir. 2014) (citing *Ballou v. Campbell*, 179 So. 2d 228, 229–30 (Fla. 2d DCA 1965)). To establish the existence of a unilateral contract, the plaintiff must prove: "(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Id.* at 740–41 (quoting *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009)). A court evaluates mutual assent by "analyzing the parties' agreement process in terms of offer and acceptance." *Id.* at 741 (footnote and citation omitted). "A valid contract—premised on the parties' requisite willingness to contract—may be 'manifested through written or spoken words, or inferred in whole or in part from the parties' conduct.'" *Id.* (quoting *L & H Constr. Co. v. Circle Redmont, Inc.*, 55 So. 3d 630, 634 (Fla. 5th DCA 2011)).

In the Amended Complaint, Plaintiffs allege—and Blume admits by way of his default—that a valid unilateral contract exists between the parties. Specifically, Blume is deemed to have admitted the following facts by his default: (1) Blume offered in writing to purchase each of the Plaintiffs' membership interests in Jaguar at a 1.4 multiplier to their capital contributions as per the Offer Letter; (2) the Offer Letter constituted a unilateral contract by which Plaintiffs could accept Blume's offer by completing, executing, and returning the Settlement Agreements attached to the Offer Letter sent by Blume; and (3) Plaintiffs accepted Blume's offer by signing and returning the Settlement Agreements. Am. Compl. ¶¶ 21–26, 31, 36–41.

Based on the well pled allegations in the Complaint, Plaintiffs have alleged the existence of unilateral contracts between each of them and Blume.

17

    4. <u>Material Breach Of Contract And Damages.</u>

Plaintiffs also allege—and Blume admits by way of his default—that Blume breached the Agreements by not paying the sums due to Plaintiffs pursuant to the terms of the Settlement Agreements, that Blume's breach was material as to each Plaintiff, and that Plaintiffs suffered damages as a result of Blume's breach of the agreements.

Upon a review of Plaintiffs' submissions, the Court finds a sufficient basis to enter default judgment in Plaintiffs' favor. Since Defendant has not appeared, "all of Plaintiff[s'] well-pled allegations in the [Amended] Complaint are deemed admitted." *Ordonez v. Icon Sky Holdings LLC*, No. 10-60156-CIV, 2011 WL 3843890, at *5 (S.D. Fla. Aug. 30, 2011) (citing *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987)). Having reviewed the Amended Complaint, the Court finds Plaintiffs' allegations are well-pled and sufficient to establish Defendant's liability to each Plaintiff. By his default, Defendant has admitted the truth of the allegations, and accordingly, this Court finds that Plaintiffs have established their breach of contract claim against Defendant.

### D. Damages

"If the admitted facts in the Complaint establish liability, then the Court must determine appropriate damages." *Ordonez*, 2011 WL 3843890, at *5. "Where all the essential evidence is on record, an evidentiary hearing on damages is not required." *Id.* (citing *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005)) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . . We have held that no such hearing is required where all essential evidence is already of record." (citations omitted)).

Plaintiffs seek damages in the amount of $1,302,000 for the sums due to the Plaintiffs under the respective Settlement Agreements plus pre-judgment interest, broken down as follows:

a. As to Plaintiff LDL Capital, LLC: $210,000 plus $13,524.01 in pre-judgment interest;

b. As to Plaintiff White Leopard Investments Ltd.: $210,000 plus $13,524.01 in pre-judgment interest;

c. As to Plaintiff David Burck: $70,000 plus $4,508.76 in pre-judgment interest;

d. As to Plaintiff Robert Thomas Burns IV: $210,000 plus $13,524.01 in pre-judgment interest;

e. As to Plaintiff Michael Costello: $140,000 plus $9,017.08 in pre-judgment interest;

f. As to Plaintiff Chris W. Deitz: $420,000 plus $27,049.41 in pre-judgment interest;

g. As to Plaintiff Sean Tabor: $21,000 plus $1,352.22 in pre-judgment interest; and

h. As to Plaintiffs George Joseph Tabor and Pamela Ann Tabor: $21,000 plus $1,352.22 in pre-judgment interest.

Plaintiffs also seek post-judgment interest to be calculated in accordance with 28 U.S.C. § 1961, commencing on the date the Final Judgment is entered, as well as reasonable attorney's fees and costs incurred in the prosecution of this action. Am. Compl. at 16; [ECF No. 25-2].

In support of the requested damages for the breach of contract claim, Plaintiffs have filed the Settlement Agreements executed by each Plaintiff and the Affidavit of Michael J. Barrie, which outlines the manner Plaintiffs calculated prejudgment interest owed to each Plaintiff from April 21, 2023, when Plaintiffs notified Blume of his breach of the Agreements, to February 14, 2024. *See* ECF Nos. 18-2 through 18-9; Affidavit of Michael J. Barrie in Support of Plaintiffs' Motion for Default Final Judgment [ECF No. 25-3].

As discussed above, the Amended Complaint provides a sufficient basis to support a finding that Defendant is liable to Plaintiffs in the amounts sought for breach of the Agreements. Having considered the pleadings and evidence submitted by Plaintiffs, the Court finds that a hearing on damages is unnecessary and that the requested amounts of damages and prejudgment interest are justified. *See Sec. Exch. Comm'n*, 420 F.3d at 1231–32 & n.13 (on the issue of damages for breach of contract, when "all essential evidence is already on record," a hearing is not required.); Fed. R. Civ. P. 55(b)(2).

## IV. CONCLUSION

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Default Final Judgment [**ECF No. 25**] is **GRANTED**.

Pursuant to Federal Rule of Civil Procedure 58, this Court will separately enter Default Final Judgment.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 23rd day of August, 2024.

                                                                **MELISSA DAMIAN**
                                                                 **UNITED STATES DISTRICT JUDGE**

cc:    Corbin Blume, *Pro Se*
        2404 Colony Plaza
        Newport Beach, CA 92660